**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00555-SBP

JOSE ANTONIO ORENDAY ESPARZA *et al.*,

　　　Plaintiffs,

v.

MARKWAYNE MULLIN[1] *et al.*,

　　　Defendants.

---

**ORDER OF UNITED STATES MAGISTRATE JUDGE**

---

**Susan Prose, United States Magistrate Judge**

　　　This matter comes before the court on Defendants Kristi Noem, Kika Scott, Pam Bondi, and U.S. Citizenship and Immigration Services ("USCIS") (collectively, "Defendants")'s Motion to Dismiss. "Motion," ECF No. 25. Defendants Noem, Scott, and Bondi are each sued solely in their official capacities. The parties have consented to this Magistrate Judge's jurisdiction. ECF No. 21; *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Having now reviewed the Motion, the evidence in support of the Motion, and the applicable law, this court respectfully **ORDERS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

**I.　　BACKGROUND**

　　　The court notes that there is no dispute as to the applicable facts and statutory framework

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Mullin, the current Secretary of the Department of Homeland Security, is substituted in this action.

here; indeed, Plaintiffs adopted the legal and factual background set forth by Defendants in filing their Response. Accordingly, the court largely adopts the same legal and factual background below, varying only as necessary to more precisely, specifically, and neutrally set forth the applicable statutory framework and background.

In October 2000, Congress created the "U nonimmigrant status" visa classification ("U visa" or "U-visa") for victims of qualifying crimes who cooperate with law enforcement in the investigation or prosecution of those crimes. *See* Victims of Trafficking and Violence Protection Act ("VTVPA"), Pub. L. 106-386, 114 Stat. 1464 (2000), codified at 8 U.S.C. § 1101(a)(15)(U). USCIS may only issue 10,000 principal U visas each year. *See* 8 U.S.C. § 1184(p)(2).

Anticipating that the number of petitioners would exceed the annual statutory cap, USCIS created a regulatory waiting list. *See* 8 C.F.R. § 214.14(d)(2); *see also* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (Sept. 17, 2007). If USCIS determines that a petition may be approved, but a visa is not available due to the statutory cap, then the petitioner is placed on a waiting list until a visa becomes available (known as a waitlist determination or "WLD"). *See* 8 C.F.R. § 214.14(d)(2). USCIS grants deferred action or parole to a petitioner and qualifying family members on the waitlist, and these individuals may also be authorized to seek employment. *Id.* Deferred action is an act of administrative convenience that gives some cases lower priority for removal. *See* 8 C.F.R. § 274a.12(c)(14); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("*AADC*") (deferred action is the exercise in administrative discretion to "decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation"). USCIS has met the statutory cap for U visas every year since 2010, and by the end of fiscal year

2024, 396,963 principal and derivative U visa petitions were pending. *See id*.

In 2008, Congress amended the VTVPA to permit the Government to grant employment authorization documents ("EADs") to aliens with pending, bona fide U visa petitions. *See William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008*, Pub. L. 110-457, § 201(c), 122 Stat 5044 (Dec. 23, 2008) (codified at 8 U.S.C. § 1184); *see* 8 U.S.C. § 1184(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U)"); USCIS Policy Manual, Volume 3, Part C, Chapter 5 . In June 2021, USCIS relied on that statutory authority to issue a new policy addressing the increase in U visa petitions as well as the growing backlog of U visa petitioners awaiting placement on the waitlist or final adjudication. That new policy gives USCIS the ability to grant EADs to U visa petitioners without making the full merits determination required for waitlist placement, so long as USCIS has determined that the petition is bona fide (a bona fide determination, or "BFD") and further determines that the petitioner does not pose a national security or public safety risk and the petition otherwise merits such placement.

Put another way, while their U visa petitions are pending, petitioners may now receive work authorization through two distinct tracks: the waitlist, or WLD, track and the bona fide, or BFD, track. *Patel v. Noem*, 788 F. Supp. 3d 950, 954-55 (N.D. Ill. 2025); *see Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 443 (6th Cir. 2022). The waitlist is for "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status." 8 C.F.R. § 214.14(d)(2). Placement on the waitlist comes with deferred action or parole and potential work authorization. *See id.*

If USCIS determines that interim benefits are not appropriate after making a bona fide

determination, the agency assesses whether the principal petitioner is nevertheless eligible for the U visa waitlist. *Id*. USCIS then decides whether to grant work authorization. *Id*. If USCIS determines that a petitioner is not eligible for the waitlist, it denies the U visa petition. *Id*. USCIS prioritizes all petitions for final adjudication in the order they were received, allegedly to maintain fairness between the petitioners placed on the waiting list and the petitioners issued BFDs and ensure that older petitions maintain priority over newer ones. *See* USCIS Policy Manual, Volume 3, Part C, Chapter 7.

Plaintiffs are various aliens who applied for U visas with USCIS between December 2, 2019, and August 28, 2024. "Complaint," ECF No. 1 ¶ 5. On February 19, 2025, Plaintiffs filed this lawsuit, alleging that USCIS has unreasonably delayed adjudicating the bona fides of their U visa applications and eligibility for interim benefits. *Id*. The Complaint asserts two claims: in "Count One," Plaintiffs allege the Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), by failing to adjudicate their eligibility for the U visa waiting list or BFDs within a reasonable time. *Id*. ¶¶ 29-34. In "Count Two," Plaintiffs allege that USCIS violated the Mandamus Act, 28 U.S.C. § 1361, by unreasonably delaying the adjudication of their U visa applications through failing to timely determine Plaintiffs' eligibility for the U visa waiting list, or BFDs, and accompanying EADS. *Id*. ¶¶ 35-37. They accordingly ask this court to order Defendants to issue WLDs, to issue BFDs, and to grant them EADs. *Id*., Prayer for Relief.

On July 21, 2025, Defendants filed the Motion at issue. On August 10, 2025, Plaintiffs filed a response. "Response," ECF No. 30. On September 2, 2025, Defendants replied. "Reply," ECF No. 37.

4

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "'accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff.'" *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction, "mounting either a facial or factual attack." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). A defendant facially attacks the subject matter jurisdiction necessary for a plaintiff's claim if, as here, he questions the sufficiency of the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995); *see Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F. Supp. 2d 1135, 1138 (D. Colo. 2008). In such a circumstance, this court determines whether subject matter jurisdiction exists after accepting the allegations in the complaint as true. *Id.* Dismissal for lack of subject matter jurisdiction is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

## III.    ANALYSIS

The court first turns to a series of relatively brief arguments raised by Defendants

regarding mootness, improper joinder, and failure to assert a claim, as well as a preliminary issue regarding the scope of Plaintiffs' claims. The court then addresses the question of whether this court has subject matter jurisdiction over Plaintiffs' claims—an issue that commands the bulk of this Order—then concludes by addressing whether Plaintiffs have failed to state a claim upon which relief can be granted.

### A.  Mootness of Claims

The court first notes that although Defendants argue that many of the Plaintiffs' claims are now moot, Motion at 14, in response, Plaintiffs represent that they have voluntarily dismissed forty-one former plaintiffs who have already received BFDs or visa approval. Response at 1 n.1; *see* ECF No. 29. Defendants do not directly acknowledge this in their reply. Defendants additionally state that they have already determined that three Plaintiffs who presumably were not voluntarily dismissed are "not eligible for a BFD," Motion at 14; if Defendants mean that they have already determined that these Plaintiff's applications are neither bona fide nor eligible for the waitlist, and if it is true those Plaintiffs have not already been dismissed, the court finds that those three Plaintiffs have already received the relief requested here, and thus, their claims are moot. However, with no reason to believe that there are any other remaining Plaintiffs with moot claims, the court otherwise deems this issue to be resolved without any need for the court's further intervention.

Defendants also argue that they have sent Requests for Evidence ("RFEs") to five Plaintiffs and that those Plaintiffs' claims should be considered moot because once an agency issues an RFE and begins processing a petition, there is "no role for the Court." *Id*. at 14-15; *see* *Meixian Ye v. Kelly*, No. 17-cv-3010-BMC, 2017 WL 2804932, at *2 (E.D.N.Y. June 28, 2017).

However, this principle is not broadly agreed upon, and the court instead finds that "[t]aking one step in the process by issuing RFEs does not mean the adjudication will not continue to be unreasonably delayed." *Lamarche v. Mayorkas*, 691 F. Supp. 3d 274, 278 (D. Mass. 2023). Accordingly, in the absence of any showing that those Plaintiffs have been derelict in responding to the RFEs, the court finds that those Plaintiffs' claims may proceed. And for clarity's sake, the court notes that its understanding is there are other Plaintiffs who have received neither BFD or WLD decisions nor RFEs. Defendants do not argue that the claims of these specific Plaintiffs are moot. Accordingly, the court finds that the claims of these Plaintiffs may proceed as well.

### B. Joinder of Claims

Defendants next argue that it was not proper to join Plaintiffs in a single action, as they do not share common questions of law or fact. Motion at 17-19. In response, Plaintiffs argue that "all of the remaining Plaintiffs assert a right jointly or severally against USCIS for the exact same problem – delays in the review of their I-918 petitions, issuance of bona fide determinations, placement on the U visa waitlist, and adjudication of their I-765 employment authorization document applications." Response at 9. However, in the Complaint, Plaintiffs acknowledge that their wait times have varied from four months to eighty-seven months, and Plaintiffs argue elsewhere that whether delays are unreasonable in this context presents a "fact-intensive question" and that "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Response at 8-9. Defendants rejoin that where each applicant or petitioner presents a different factual situation that requires personalized attention by USCIS and, ultimately, by the court, joinder is neither justified nor feasible. Motion at 18.

Though finding this issue to be a somewhat close call, the court agrees with Plaintiffs. Plaintiffs may join in one action if (1) their claims arise out of the same transaction or occurrence, and (2) they share a common question of law or fact. Fed. R. Civ. P. 20(a). To the extent each remaining Plaintiff has been awaiting a determination for over four months, *see* Complaint at 4, Plaintiffs share common questions of law and fact such that joinder is proper here. These Plaintiffs can succinctly be summarized as individuals who have each fallen prey to the same occurrence of having to await a BFD determination for over four months, and the court disagrees with Defendants' assertion that "any merits resolution would require the Court to assess the various alleged delays and reasons separately." And at this stage of the proceedings, the only seemingly relevant distinction between the remaining individual Plaintiffs is that they have been waiting for different periods of time; although it may ultimately prove to be necessary to assess, e.g., Plaintiffs who have been waiting for years differently from Plaintiffs who have merely been waiting for several months, this does not mean that the alleged "delays and reasons" will have to be addressed separately in every Plaintiff's case. For instance, distinctions between various Plaintiffs who have been waiting for over a year for a determination are, in most or all cases, unlikely to require precisely tailored evaluations.

Relatedly, the court notes that Defendants overstate any joinder-related concerns pursuant to Rule 20(a)(1) here. Despite Defendants' arguments otherwise, although some Plaintiffs have filed their own U visa petitions and others have sought derivative status, this does not mean that Plaintiffs' claims fail to arise from common occurrences or series of occurrences or as common questions of law and fact. As Plaintiffs state, joinder is generally strongly encouraged under the Federal Rules of Civil Procedure, *see, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

724 (1966), and the fact "[t]hat there may be distinctive treatment of each Plaintiff is not determinative" of whether joinder is proper, *Kohn v. Am. Hous. Found. I, Inc.*, 170 F.R.D. 474, 476 (D. Colo. 1996); "[a]bsolute identity of events is not necessary," *id.*, and "the presence of *some* individualized questions of law and fact does not mean that there are *no* common questions" or that joinder should therefore be precluded. *Hufford v. Hyundai Cap. Am.*, No. 21-cv-00944-DDD-SKC, 2023 WL 2753673, at *1 (D. Colo. Mar. 31, 2023) (emphasis added). And the fact that some Plaintiffs' individual circumstances will differ in material ways from others does not automatically render joinder unwarranted. *Kohn*, 70 F.R.D. at 476 (collecting cases in which plaintiffs' individual claims and circumstances differed, but joinder was nonetheless found to be warranted). Moreover, joinder does not bar Defendants from later moving for separate trials should discovery later reveal that severance or bifurcation is appropriate. *Id.* Accordingly, the court finds no issues with joinder here that might outweigh the federal courts' strong preference for encouraging joinder.

### C. Ripeness of WLD Issue

Defendants argue that Plaintiffs fail to establish a plausible claim for relief because they are not presently entitled to a WLD, rendering this issue unripe for adjudication. Motion at 12-13. The court disagrees. Plaintiffs note that they are seeking "an order compelling the Defendants to immediately make determinations of their eligibility for a BFD, EAD, and/or deferred actions under the mandamus statute," Complaint at ¶ 6, not simply a WLD, so they are seeking forms of relief other than a WLD that Defendants must address as well. Moreover, Defendants do not sufficiently support their assertion that a BFD is "the preliminary adjudicative step" here and Plaintiffs could not receive a WLD without first receiving a determination that they are entitled

9

to a BFD; indeed, prior caselaw implies that these are instead parallel tracks. *See, e.g.*, *Patel*, 788 F. Supp. 3d at 953, 956 (stating that "while their U-Visa petitions are pending, petitioners may receive work authorization through two distinct tracks: the waitlist track and the 'bona fide determination' (BFD) track," and although acknowledging that "a favorable BFD could obviate the need for a waitlist determination," concluding that "a grant or denial of a BFD is not a prerequisite for a waitlist determination"); *Ayala v. Noem*, 781 F. Supp. 3d 1187, 1198 (D.N.M. 2025) (finding, inter alia, that it is not clear that the BFD process is "*always*" the preliminary adjudicative step before considering a WLD and noting that even the USCIS policy manual "hedges on this matter"). Defendants have not elucidated any relevant changes to the applicable framework that might cause Plaintiffs to *need* to obtain a BFD first. And regardless, to find that the fact that Plaintiffs are eligible for BFDs insulates Defendants from ever having to reach a WLD "could lead to the perverse result that" by indefinitely delaying a waitlist decision, Defendants could insulate themselves from ever reaching a WLD even if the statutory or regulatory scheme does not grant them the discretion to unilaterally make such a call. *Patel*, 788 F. Supp. 3d at 956. Each of these reasons is individually sufficient for the court to reject Defendant's argument that Plaintiffs have failed to establish a plausible claim for relief.

### D.  Subject Matter Jurisdiction Issue

These comparatively straightforward matters having been dealt with, the court turns to Defendants' somewhat more complicated argument regarding subject matter jurisdiction. Defendants move to dismiss in part "on the basis that 8 U.S.C. § 1252(a)(2)(B)(ii) strips courts of jurisdiction" over Plaintiffs' claims. This provision states, "with some exceptions not relevant here, that 'no court shall have jurisdiction to review . . . any other decision or action of the

Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.'" *Patel*, 788 F. Supp. 3d at 954 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). The "subchapter" to which § 1252(a)(2)(B)(ii) applies includes 8 U.S.C. §§ 1151-1381. *Id.* (citing *Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010)). Defendants' core argument here is that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this court of jurisdiction to compel USCIS to adjudicate interim U visa benefits because such matters are discretionary under 8 U.S.C. § 1184(p)(6).

Plaintiffs bring Count One pursuant to the Administrative Procedure Act and Count Two pursuant to the All Writs Act. *Butanda v. Wolf*, 516 F. Supp. 3d 1243 (D. Colo. 2021), lays out the applicable framework regarding such claims:

> The Administrative Procedure Act generally permits a court to step in when an agency fails to act. A reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Relief under Section 706(1) is limited to an agency's failure "to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). Section 706(1)'s "limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* So "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65, 124 S.Ct. 2373. Section 706(1) encompasses actions mandated by statute and by regulation. *Id.*
>
> The All Writs Act, 28 U.S.C. § 1651, similarly empowers this court to compel an agency, usually through a writ of mandamus, to carry out some "specific, unequivocal command" required of it by law. *Id.* at 64, 124 S.Ct. 2373. A court may issue a writ of mandamus ordering an agency to act only if the act requested is "precise" and "definite," "about which [an agency] had no discretion." *Id.* A writ of mandamus may issue, in short, for only ministerial, non-discretionary duties. *Id.*
>
> There are two additional limitations on this court's jurisdiction important for this

11

case—one in the Administrative Procedure Act, the other in the Immigration and Nationality Act. First, the APA precludes review of "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This limitation is the mirror image of Section 706(1)'s requirement that the court can compel an agency to act when it has failed to take a discrete mandatory action. Second, the Immigration and Nationality Act strips this court of "jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The limitation in Section 1252(a)(2)(B)(ii) is limited to decisions or actions committed to agency discretion by statute only; it does not apply to actions made discretionary by regulation alone. *Kucana v. Holder*, 558 U.S. 233, 246, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010).

*Butanda*, 516 F. Supp. 3d at 1247-48.

The parties seemingly agree that this court does not have jurisdiction to review decisions regarding orders of removal made by the Attorney General "the authority for which is specified under [8 U.S.C. §§ 1151-1381] to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). However, Defendants argue that this principle generally applies to 8 U.S.C. §§ 1151-1381 "regardless of whether the judgment, decision, or action is made in removal proceedings" in spite of 1252 being titled "[j]udicial review of orders of removal." 8 U.S.C. § 1252(a)(2)(B). Moreover, Defendants argue that the pace of adjudication of the interim U visa benefits is discretionary, and thereby covered by § 1252, because pursuant to § 1184(p)(6), USCIS "*may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status" (emphasis added), but is not required to do so. Defendants also argue that "§ 1252(a)(2)(B)(ii) precludes review of all agency decision-making derived from § 1184(p)(6), including any final, discretionary EADs or deferred action, and their predicate non-discretionary BFDs." Motion at 11.

12

The court notes that although Defendants treat the issue of whether granting *employment authorization* to U visa applicants is "discretionary" as though it is the central issue in this matter and primarily frame their jurisdictional arguments around this issue, the court disagrees. The court understands Plaintiffs to be primarily seeking WLDs and BFDs, not EADs; in fact, at most, the court understands Plaintiffs to be seeking work authorization in the alternative under Count Two. Though Plaintiffs cursorily refer to "employment authorizations" in bringing both Counts One and Two and within their prayer for relief, in bringing Count One, Plaintiffs do not actually ask this court to hold that they are entitled to such authorization, but instead simply attempt to compel Defendants to address their petitions. *See* Complaint at 10-11 (stating, inter alia, that plaintiffs "had a clear right, under 8 C.F.R. § 214.14(d)(2), to a determination of eligibility for the waiting list, and a clear right to that determination within a reasonable period of time" and noting that "[i]n the alternative, a bona fide determination should have been made consistent with USCIS policy," but only cursorily referencing a right to an employment authorization determination).

Nonetheless, the court agrees with Defendants that the court lacks jurisdiction to compel Plaintiffs to adjudicate EADs. Indeed, Plaintiffs do not directly contest this argument in their Response to Defendants' Motion. There appears to be a significant judicial majority that has held that the federal courts lack jurisdiction over such requests because of, inter alia, Section 1184(p)(6)'s use of the word "may" in setting forth the authority to issue work authorizations. *See, e.g.*, *Barrios Garcia*, 25 F.4th at 451; *Gonzalez v. Cuccinelli*, 985 F.3d 357, 371 (4th Cir. 2021); *Reyes Olmos v. U.S. Citizenship & Immigr. Servs.*, 785 F. Supp. 3d 459, 472 (D. Neb. 2025). In the absence of any argument from Plaintiffs to the contrary, the court finds the

reasoning set forth in these cases to be compelling, and accordingly, adopts the reasoning set forth in these cases here. To the extent Plaintiffs ask this court to compel adjudication of their employment authorization requests or EADs, therefore, that request is dismissed without prejudice due to lack of jurisdiction.

Turning to the parties' arguments regarding WLDs and BFDs, the court assumes for argument's sake that Defendants are correct that § 1252 applies in situations beyond removal proceedings. *See Van Dinh v. Reno*, 197 F.3d 427, 432 (10th Cir. 1999) ("We conclude that § 1252(a)(2)(B)(ii) is not limited in application only to review by the circuit courts of final orders of removal."). *But see, e.g.*, *Tista v. Jaddou*, 577 F. Supp. 3d 1219, 1224-25 (D.N.M. 2021) ("A simple textual review of the statute, read in context, strongly suggests that § 1252(a)(2)(B)(ii) refers to judicial review of orders of removal. . . . Plaintiffs' claims in this case . . . [instead stem from] the agency's lack of action on their U visa petitions. Therefore, the Court finds that the plain text of § 1252 does not independently preclude review of Plaintiffs' claims."). Nevertheless, the court concludes that § 1252 does not preclude this court's review.

There appears to be no dispute that "[t]he Supreme Court has held that § 1252(a)(2)(B)(ii) does not bar judicial review of decisions that are specified as discretionary by regulation" as opposed to statute. *Barrios Garcia*, 25 F.4th at 443; *see, e.g.*, *Butanda*, 516 F. Supp. 3d at 1248 ("The limitation in Section 1252(a)(2)(B)(ii) is limited to decisions or actions committed to agency discretion by statute only; it does not apply to actions made discretionary by regulation alone."). And it also appears well-settled that "Congress mandated that the agency pass implementing regulations for the U-Visa program." *Gonzalez*, 985 F.3d at 374 n.10 (citing 8 U.S.C. § 1101(a)(15)(U)); *see also, e.g.*, *Patel*, 788 F. Supp. 3d at 956 (same). The court

14

additionally finds, consistent with the large majority of other cases it has reviewed that have considered this issue, that as a result, DHS created the waitlist process via regulation and "impelled itself to place on the waitlist principal applicants who would be eligible for U-visas without the 10,000-person statutory cap"; the court notes that these regulations "coexist with the BFD process," as alluded to above. *Barrios Garcia*, 25 F.4th at 443.

Accordingly, there is no relevant statutory grant of discretion in this context prohibiting judicial review of WLDs, as Congress made implementing regulations for the U visa program mandatory and WLDs have been made non-discretionary pursuant to these implementing regulations. *Id*. And the court finds that a nearly identical principle applies to BFDs. "[T]he BFD process was born of policy guidance." *Ayala*, 781 F. Supp. 3d at 1197. The court recognizes that the relevant statute states that "[t]he Secretary *may* grant employment authorization documents to any alien who has a pending, bona fide application [for a U visa]." 8 U.S.C. § 1184(p)(6) (emphasis added). However, the court agrees with the Sixth Circuit and other courts which have held that any discretion provided by the word "may" applies to discretion to grant employment authorization documents and is not a grant of discretion to reach a bona fide determination. *See, e.g.*, *Barrios Garcia*, 25 F.4th at 444-45 (under § 1184(p)(6), "USCIS must decide whether a principal petitioner's U-visa application is 'bona fide' before the agency undertakes discretionary decisions . . . . In other words, Section 1184(p)(6) is not a wholly discretionary statute."); *Ayala*, 781 F. Supp. 3d at 1200 (reaching the same conclusion).

To elaborate on these points, the court respectfully disagrees with Defendants that the timeline for decisions made in either the WLD or BFD context is discretionary. The court recognizes that "[c]ourts have split on" the issues of whether judicial review of WLDs and BFDs

is precluded due to their being discretionary. *See, e.g.*, *Patel*, 788 F. Supp. 3d at 956. However, this court sides with the courts holding that implementing regulations for the U visa program were made mandatory by Congress, and that these regulations require Defendants to place applicants on the waitlist; accordingly, Defendants clearly have a non-discretionary duty to place U visa petitioners on the waitlist. "[A]n agency can create a non-discretionary duty by binding itself through a regulation carrying the force of law." *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1244 (D.C. Cir. 2018). DHS has done so here, as "USCIS's regulations mandate the placement of U-visa-eligible petitioners on the waitlist." *Barrios Garcia*, 25 F.4th at 450 (citing 8 C.F.R. § 214.14(d)(2)). Accordingly, "the federal courts may determine whether USCIS unlawfully withheld or unreasonably delayed the placement of the principal petitioners on the U-visa waitlist under § 706(1)." *Id*. And the court also agrees with other courts holding that "USCIS's determination of whether a U-visa application is 'bona fide' is mandatory per [this court's] construction of § 1184(p)(6) and the BFD process's kindred interpretation of that provision." *Id*. at 444, 450-51 (explaining, inter alia, that pursuant to the USCIS policy manual, "USCIS *first determines* whether a pending petition is bona fide[, and only then] . . . *in its discretion*, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion" (emphasis in original), then citing *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998), for the proposition that an agency manual intended to be mandatory can carry the force of law). Moreover, Defendants have not cited, nor has this court uncovered, any provision under which Congress has specified that the USCIS has discretion to indefinitely delay adjudicating U visa petitions. Rather, the court notes that even *Butanda*, a case that, as discussed below, Defendants rely upon heavily here,

16

acknowledges that USCIS is required to eventually conclude its review of such matters. *Butanda*, 516 F. Supp. 3d at 1249 (agreeing with the plaintiff that USCIS is required to conclude adjudication of U visa petitions, though finding that the court does not have the authority to tell USCIS when to do so).

Additionally, the court notes that it is unable to infer discretion from the *absence* of a statutory deadline; instead, Congress must have "state[d] explicitly or in detail" that discretion. *Kucana*, 558 U.S. at 243 n.10 (quoting Webster's New Collegiate Dictionary 1116 (1974)); *Moreno v. Wolf*, 558 F. Supp. 3d 1357, 1364 (N.D. Ga. 2021). Indeed, while USCIS may promulgate regulations regarding certain aspects of the U visa program, *see* 8 U.S.C. § 1184(a)(1), that authority does not amount to "unfettered discretion . . . [to] simply not adjudicate a [U visa] petition." *Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 89 (D.S.C. 2020); *Moreno*, 558 F. Supp. 3d at 1364 (same).

And relatedly, as Plaintiffs note, the Supreme Court has emphasized that "[e]xecutive determinations generally are subject to judicial review" and courts should only decline to provide judicial review when there is "clear and convincing evidence" that Congress intended to preclude review in a particular circumstance. *Kucana*, 558 U.S. at 251-52; *cf., e.g.*, *Saini v. USCIS*, 553 F. Supp. 2d 1170, 1174 (E.D. Cal. 2008) ("To the extent that § 1252(a)(2)(B) creates an exception to judicial review, such exception must be narrowly construed."). Here, there is no such clear and convincing evidence. And even if there was such evidence reflecting that Congress clearly intended to preclude judicial review of BFDs or WLDs for U visa applicants—and this court does not find that Congress intended as much—there would still be little or no indication that Congress intended to preclude judicial review of the *timeline* for conducting such review. *See,*

17

*e.g.*, *Moreno*, 558 F. Supp. 3d at 1365 (reaching an identical conclusion).

Following on this last point, "[t]he plain language of [§ 1252] addresses 'decision or action' on immigrant matters, not inaction, which is the subject of [this] Complaint." *Fu v. Gonzalez,* No. 07-0207-EDL, 2007 WL 1742376, at *4 (N.D. Cal. 2007). While Defendants argue that BFDs "are not independently reviewable decisions and cannot be reviewed," even assuming this is correct, this does not explain why the court could not compel Defendants to reach a WLD or BFD so long as the court does not compel Defendants to reach a *particular* determination. Defendants provide little insight into their stance on this issue in raising this argument, merely stating that § 1252 precludes review of all decision-making derived from § 1184(p)(6) as "discretionary." But even if such relief is discretionary, this does not mean that the *pace of adjudication* of U visa applications is discretionary.

And finally, although Defendants argue that they have no mandate to conduct full eligibility review for Plaintiffs and that therefore, the court cannot provide Plaintiffs with the relief they seek because it is within Defendants' discretion to adjudicate Plaintiffs' WLD or BFD on whatever timeline they see fit, even assuming Defendants were correct that they have no such mandate—and for the reasons stated above, this court disagrees—this conclusion would not necessarily follow. The court finds that adjudication would nonetheless have to occur within a reasonable time because "a contrary position would permit the USCIS to delay indefinitely, a result Congress could not have intended." *Saini*, 553 F. Supp. 2d at 1176 (citation modified); *see Moreno*, 558 F. Supp. 3d at 1365; *Razaq v. Poulos,* No. 06-2461-WDB, 2007 WL 61884, at *3 (N.D. Cal. 2007) (the "'duty to decide' becomes no duty at all if it is accompanied by unchecked power to decide when to decide"); *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal.

18

2007) ("While the ultimate decision to grant or deny an application for adjustment of status is unquestionably discretionary, there exists a non-discretionary duty to act on and process the application.").

The reasoning set forth above permits this court to conclude that the court has jurisdiction to hear Plaintiffs' claims. Nonetheless, Defendants argue that the "pace of processing" of Plaintiffs' petitions is within the scope of 1252's jurisdictional bar because a court within this District, as well as certain other federal courts, have ruled as much. In making this argument, Defendants rely heavily on *Butanda*, noting that Plaintiffs fail to address this ruling in responding to Defendants. In light of Defendants' heavy reliance on *Butanda*, this court is obliged to discuss it at length here. With enormous regard for her judicial colleague, the undersigned explains her respectful disagreement with the *Butanda* court on several points.

In *Butanda*, the court dealt separately with the issues of whether the plaintiff was entitled to a waitlist determination and whether the plaintiff was entitled to a determination regarding employment authorization, concluding that the court did not have jurisdiction to consider either. Examining *Butanda*, this court respectfully reaches a different conclusion both for the reasons stated above and for several additional reasons.

First, in *Butanda*, the court apparently reached its decision in part because the plaintiff failed to cite pertinent case law in presenting her case. The court specifically noted that the plaintiff had not provided the court with any citations to cases that discussed the jurisdictional bar in § 1252(a)(2)(B)(ii); the court apparently (and understandably) declined to conduct its own search for such cases and ultimately found that the plaintiff's citations to cases not discussing this jurisdictional bar were unpersuasive. 516 F. Supp. 3d at 1249. In contrast to the plaintiff in

19

*Butanda*, here, Plaintiffs have cited multiple cases that discuss this jurisdictional bar; moreover, through its own research, the court has made itself aware of additional cases that both discuss the jurisdictional bar in detail and favor Plaintiffs' position. Due to the plaintiff's apparent lack of preparation, the court in *Butanda* does not examine many of the points the court raises above in concluding that it has jurisdiction here.

Next, the court notes that the *Butanda* court, despite finding that § 1252(a)(2)(B)(ii) precluded the court's jurisdiction over the plaintiff's claims, did not squarely address the issue of whether inaction on U visa petitions can constitute "action" for the purposes of that section's jurisdictional bar, instead merely stating that the terms "decision" and "action" necessarily encompass "any act or series of acts" that is discretionary within the process of reviewing a U visa application, and then concluding that "absent a Congressional mandate to act within a certain period, the timeframe for deciding a U-Visa application is one of those discretionary acts within the ambit of Section 1252." *Butanda*, 516 F. Supp. 3d at 1249. In other words, the *Butanda* court does not directly discuss how lack of action on Plaintiffs' petitions could properly be construed as "action" or even "any act or series of acts." *See, e.g.*, *Fu*, 2007 WL 1742376, at *4 (ruling in favor of plaintiffs under similar circumstances).

With regard to the concept that adjudication must occur within a reasonable time because a contrary position would permit Defendants to delay indefinitely and "Congress could not have intended" such a result, *Saini*, 553 F. Supp. 2d at 1176, the *Butanda* court acknowledges that USCIS is required to conclude review of the applications, but nevertheless finds with minimal elaboration that "the court has [nonetheless] been divested of the authority to tell USCIS when it must do so." 516 F. Supp. 3d at 1249. And although the *Butanda* court does note that "Congress

20

knows how to, and often does, prescribe timelines for nonimmigrant admission when it wants to," *id*., this court notes that the lack of a specific timeline being provided does not necessarily lead to the conclusion that no timeline should apply here, and does not necessarily preclude the court from applying a reasonableness standard to the timeline for adjudication here, particularly in what Defendants acknowledge is a highly factually dependent context. *See* Motion at 18. For these reasons, in considering this specific issue, this court is respectfully unpersuaded by *Butanda's* analysis.

*Butanda* also cites *Gonzalez*, 985 F.3d 357, as a "persuasive" decision and discusses the case at some length, as Defendants approvingly note in their Motion. However, in *Gonzalez*, the Fourth Circuit held that the plaintiffs' claim that "the agency has 'unreasonably delayed' adjudicating Plaintiffs' petition for a U visa to determine whether they should be placed on the waiting list" was "reviewable," noting that "Congress mandated that the agency pass implementing regulations for the U-Visa program, which it did," and that "the agency has committed itself by regulation to place eligible applicants on the waiting list." *Id*. at 375, 375 n.10. The *Butanda* court differentiates itself from *Gonzalez* in this respect by stating that the Fourth Circuit in *Gonzalez* "based its holding on the fact that Congress mandated that the agency pass implementing regulations of the U-Visa program and that the agency committed itself in those regulations to place U-Visa applicants whose applications were denied based 'due solely to' the 10,000-visa cap." *Butanda*, 516 F. Supp. 3d at 1251 n.2. The *Butanda* court then states that this holding from *Gonzalez* was "not applicable" to *Butanda* because the plaintiff hadn't "allege[d] that she has been denied solely because of the cap" and instead "alleges that USCIS hasn't yet considered her application whatsoever." *Id*. This court respectfully disagrees that this

21

is a relevant distinction, and in fact, does not believe it is a distinction at all; the plaintiffs in *Gonzalez* do not appear to have based their claims upon the cap and seemingly had not yet had their applications considered either. *See Gonzalez*, 985 F.3d at 360 (plaintiffs "allege that the Department of Homeland Security has unlawfully withheld or unreasonably delayed adjudication of their U-Visa petitions").

And the court also respectfully finds that *Gonzalez* is flawed in its interpretation of the BFD framework. The court recognizes that the *Gonzalez* plaintiffs had apparently not requested a BFD determination, as no such request is mentioned. However, the Fourth Circuit held in *Gonzalez* that the court lacked jurisdiction over the plaintiffs' employment authorization-related claims because "the agency was not *required* to adjudicate their requests for work authorization" and "nothing in § 1184(p)(6) requires the agency to do anything" because "the Secretary has discretion to grant work authorizations." *Gonzalez*, 985 F.3d at 366-67. However, as explained above, this court joins other federal courts, including the Sixth Circuit, in recognizing that the *Gonzalez* court made an error in interpreting § 1184(p)(6). While *Gonzalez* states that "[t]he term 'pending, bona fide application' merely sets forth a prerequisite that the agency must satisfy if it chooses, in its discretion, to conduct an adjudication," 985 F.3d at 371, this court agrees with the now seemingly well-established, more natural interpretation elucidated by other courts: "the Fourth Circuit [in *Gonzalez*] reads § 1184(p)(6) front to back . . . whereas we read § 1184(p)(6) back to front—i.e., USCIS must determine whether a U-visa application is pending and bona fide before the agency 'may' grant work authorization to the petitioner." *Barrios Garcia*, 25 F.4th at 444 (clarifying that the USCIS Policy Manual sets forth the same interpretation). Accordingly, the court finds much of the analysis in *Gonzalez* to rest upon a fundamentally flawed premise.

Other, more minor points and citations mentioned by Defendants do not succeed in changing this court's views regarding jurisdiction either. For instance, the court notes that amongst multiple cases cited without qualification by Defendants, the courts clearly would have found against Defendants on the WLD issue. *See Gonzalez*, 985 F.3d at 374 n.10; *Patel*, 788 F. Supp. 3d at 956 (concluding of WLDs that because Congress mandated that USCIS pass implementing regulations for the U-Visa program, "in the absence of a statutory grant of discretion in this context, these regulations are sufficient to empower courts to entertain claims of unreasonable delay").[2] Moreover, as stated above, the court notes that the BFD issue was apparently not before the court in *Gonzalez*. And *Patel* only provides a cursory examination of

_____

[2] Yet another case cited by Defendants, *Sonani v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 25-cv-68, 2025 WL 1489563, at *6 (D. Neb. May 23, 2025), did not provide its own analysis of the issue of whether inaction on the petitions could constitute "action," instead resting its analysis entirely on the analysis provided in *Rico v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 25-cv-119, 2025 WL 1192465 (D. Neb. Apr. 23, 2025), which in turn rested its own analysis on the idea that *Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024), "applied § 1252(a)(2)(B)(ii) to discretionary decisions about the decision-making process, not just the result." Beyond not being binding upon this court, the analysis provided in these cases is not compelling here; among other potential issues, *Thigulla* was decided in a very different context; it does not directly address why the decision to delay adjudication on the petitions at issue could be considered "action" either, and the defendants in *Thigulla* apparently made an active decision to delay action on the petitions to a *specific* date rather than simply failing to address the petitions entirely. And *Rico* did not separately discuss BFD issues and work authorization issues, instead addressing these issues in tandem. *Cf., e.g.*, *Rico*, 2025 WL 1192465, at *1 (plaintiff "asks the Court to order USCIS to . . . [determine] both whether the plaintiff has filed a 'bona fide' U-visa petition and whether to issue employment authorization documents"). As alluded to above, there are vital distinctions between these issues. Moreover, the court notes that confusingly, in commencing its analysis, *Sonani* suggests the court will ultimately rule that "[b]ecause Plaintiff only seeks a decision on their BFD, not the work authorization associated with the BFD, USCIS['s] motion to dismiss is inapposite and should be denied." *Sonani*, 2025 WL 1489563, at *2. However, the court reaches an entirely different conclusion in its subsequent analysis. For each of these reasons, the court does not find the analysis provided in *Sonani* to be compelling.

the BFD timing issue, merely noting that the term "bona fide" is "nowhere defined in the statutory scheme" and apparently presuming that this supposed lack of definitional clarity grants USCIS full discretion over the timing of BFDs. *See* 788 F. Supp. 3d at 955. This court disagrees for the same reasons stated in *Barrios Garcia*, amongst others: while USCIS "may" grant work authorization to a petitioner pursuant to § 1184(p)(6), thereby giving USCIS discretion to do so, this discretionary language does not apply to the predicate BFD that USCIS first undertakes. *Barrios Garcia*, 25 F.4th at 444. The court also does not find that any lack of clarity as to the meaning of the term "bona fide" in this context goes to the issue of timing; accordingly, the court does not agree with *Patel*'s implication that lack of clarity as to the precise definition of "bona fide" somehow provides "clear and convincing evidence" that Congress intended to preclude review of the timing of a BFD as specified to be within USCIS's discretion. *See Kucana*, 558 U.S. at 252. Finally, although Defendants criticize Plaintiffs for failing to directly address *Butanda* in their Response, Defendants similarly "make no mention of the numerous other district courts that have come to the opposite conclusion [as Defendants]—that 1252(a)(2)(B)(ii) does *not* preclude review of such claims." *Ayala*, 781 F. Supp. 3d at 1203 (collecting cases). For the reasons set forth above, the court finds the reasoning set forth in cases such as *Ayala* to be more compelling than the reasoning set forth in the cases cited by Defendants.

For each of these reasons, and also for the reasons stated above, after evaluating the cases provided by the parties and conducting its own research into the issue, this court concludes that the cases holding that the court's review of the BFD and WLD issues is not precluded here are more persuasive.

### E.  Failure to State a Claim

The court next turns to Defendants' sole argument for dismissal for failure to state a claim: that Plaintiffs' alleged wait times are not unreasonable as a matter of law. Plaintiffs argue in response that it is de facto unreasonable to determine whether their wait times are unreasonable at this stage of proceedings.

The court agrees with Plaintiffs that it would be premature to dispose of Plaintiffs' claims at this stage for this reason. The court notes that even cases cited by Defendants acknowledge that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez*, 985 F.3d at 375. The court agrees. And Defendants have provided no compelling argument that might cause the court to vary from this principle. The court accordingly declines to dispose of Plaintiffs' fact-dependent unreasonable delay claims at this stage of proceedings.

Moreover, even if this court were to evaluate Plaintiffs' claim with reference to the factors set forth in *Telecomm. Res. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), as Defendants request, the court would conclude that Plaintiffs' claims should proceed. These factors include (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

25

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *Id.* at 80. At this time, despite Defendants noting that "USCIS prioritizes all petitions for final adjudication in the order they were received to maintain fairness," Motion at 4, the court finds that in other respects it does "not know enough about how the agency implements its rules and exceptions" and that the third and fifth factors heavily favor Plaintiffs because "Plaintiffs have pled sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by the long wait." *Gonzalez*, 985 F.3d at 375; *see also, e.g.*, *Barrios Garcia*, 25 F.4th at 452 (noting various harms shared by Plaintiffs in the present matter and stating that "[b]ased on these factual allegations [of harms suffered] alone, we hold that all Plaintiffs have sufficiently alleged that USCIS has unreasonably delayed deciding whether to place principal petitioners on the U-visa waitlist"). Accordingly, the court would conclude based on conducting a *TRAC* analysis that Plaintiffs' claims should proceed.

### F. Eligibility for Mandamus Relief

Finally, as codified in 28 U.S.C. § 1361, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is a drastic remedy "to be invoked only in extraordinary situations," *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980), and it is not available when review by other means is possible. *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 403 (1976). "To be eligible for mandamus relief, the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005) (citation omitted).

26

Plaintiffs request mandamus relief in the alternative under Count Two and have at least arguably shown that they meet prongs (1) and (2) of the test. However, as the court concludes above, the remedy provided by § 706(1) is an adequate one available to Plaintiffs that, accordingly, precludes mandamus relief. *Mt. Emmons Min. Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997); *see also, e.g.*, *Bustos v. Mayorkas*, No. 20-cv-1348-KG-SMV, 2021 WL 3931173, at *8 (D.N.M. Sept. 2, 2021). For this reason, the Court dismisses Count Two.

**CONCLUSION**

For the foregoing reasons, this court **ORDERS** that the Motion be **GRANTED IN PART and DENIED IN PART**. All Plaintiffs whose applications Defendants have already determined are neither bona fide nor eligible for the waitlist are dismissed from this action without prejudice due to the court finding their claims to be moot. Plaintiffs' request for this court to order Defendants to adjudicate employment authorization determinations, or EADs, is denied without prejudice for lack of jurisdiction. Court Two, Plaintiffs' request for mandamus relief, is dismissed due to the availability of another adequate remedy. In all other respects, the Motion is denied.

DATED: March 30, 2026    BY THE COURT:

_____

Susan Prose
United States Magistrate Judge